**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**CHARLES WUNDERLICH,**<br>                                        *Defendant*. | No. 22-cr-9 (DLF) |

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

This case, and this defendant, represent the promise of the federal criminal justice system. At the time of his offense, Charles Wunderlich—a victim of childhood neglect and abuse (both physical and sexual)—was a homeless methamphetamine addict with severe mental illness surviving on the streets through theft and other petty crimes. This tragic situation was smothering enormous potential. Charles is an extremely intelligent, capable, gentle, and kind man who despite his challenges, managed to teach himself fluent Spanish, enroll in college, and obtain a computer certification. But without housing, treatment for his hallucinations, or a support structure to counter the pull of self-medication through drugs, he was caught in a cycle of arrests.

The Charles Wunderlich of 2019 no longer exists. In his place is a bright-eyed, confident, optimistic man eager to embrace life and excel. In addition to the three years this case has given him away from drugs, the main difference in his life is hope: while in prison, Charles has participated in Bible studies, ESOL instruction, and other positive activities, making a great impact on his fellow inmates.

The brother of one of these inmates, Matt Keelen, noticed the positivity coming from Charles and got to know him over the last year. Ex. 1. A business owner, Keelen offered Charles an office job in his company with a good salary upon his release. This simple offer changed

Charles's life, as he had never had someone believe in him or had access to the promise of stability and structure of a good job. In calls with his attorney, Charles has beamed with pride and hope when speaking of this opportunity. He is yearning to use it as a stepping-stone for a brighter, productive, and law-abiding future.

The sentencing statute, 18 U.S.C. § 3553, provides this Court with the tools and the directive to achieve this positive outcome for Charles and society. Without doubt, the distribution of child pornography—filmed sexual abuse—is a terrible crime. As a victim of abuse himself, Charles is ashamed and remorseful for his role in participating in a marketplace for this content. Upon his arrest, Mr. Wunderlich immediately expressed his desire to plead guilty and to assist the government's investigation if possible with his technical knowledge.

While serious, however, the offense conduct here is fairly limited. It consists of uploading 13 videos in 2016 and downloading 4 videos in 2017. As the Court is well-aware, child pornography cases often involve hundreds of videos and thousands of images. Yet even for these quantities, courts often understand that issues of addiction, mental health, and untreated childhood trauma often play a large role in these offenses, and fashion compassionate sentences for such non-contact victim-perpetrators. As noted in the government's sentencing memorandum, that includes many individuals involved with *the same website* as Mr. Wunderlich, including:

- Ernest Wagner, who was sentenced to 60 months (the minimum) for uploading 84 videos and downloading 40 videos (7x Wunderlich's total);

- Casey Santious Head, who was sentenced to 60 months (the minimum) for uploading 24 videos and downloading 120 videos (8.5x Wunderlich's total);

- Jason DeJournett, who was sentenced to 33 months for downloading 133 videos (8x Wunderlich's total); and

- Michael Ezeagbor, who was sentenced to 6 days (time served) for uploading 10 videos and downloading 42 videos (3x Wunderlich's total).

Gov't Sent. Mem. at 21–22.

The main difference between these cases, which involved up to *8.5 times* as many videos, is Mr. Wunderlich's criminal history category. As result of a cycle of arrests, release without treatment, homelessness, and more arrests, Mr. Wunderlich has an outsized criminal history category of VI. Significantly, however, none of these arrets involved violence, sex crimes, or child pornography. The majority of his arrests were for petty offenses such as bad checks, stealing a bicycle, and stealing the purse of an acquaintance, during periods when Mr. Wunderlich was homeless and self-medicating with methamphetamine. Dr. Sara Boyd, a psychologist who evaluated Mr. Wunderlich, explained the challenges he faced trying to escape this cycle:

> It is striking to note how many times Mr. Wunderlich reportedly attempted to seek assistance with housing, and medication, prior to his discharge from Riverside Community Hospital, only to have evidently been discharged without (a) a two week supply of medication, (b) an already-scheduled intake at a local agency that could maintain Mr. Wunderlich's treatment in the community after discharge, and (c) housing assistance to ensure that he did not become immediately destabilized (which would be a critical risk factor for both substance abuse relapse as well as criminal recidivism). Instead, this individual with significant psychiatric disabilities and associated support needs was evidently discharged with basically no plan or supports in place, even though he asked for help multiple times prior to discharge.

Boyd Psychological Evaluation Report at 13.

Having now been clean for three years, and having for the first time been involved in the federal system with its resources to help him grow psychologically, socially, and spiritually, Mr. Wunderlich is in a very different place. With all due respect to the government and probation, their history-driven recommendation of a 10-year sentence overlooks that an additional five years for this defendant would not serve any of the purposes of sentencing in § 3553(a). It would not reflect the seriousness of this offense, since Wunderlich's offense conduct was less serious than the cases discussed above; it would not serve as a deterrent, because Mr. Wunderlich's criminal history was rooted in his illness and need for housing and medication, not mere disrespect for the law; and it would not help his rehabilitation any more than a five-year sentence, because he is well on his

way to recovery and most needs the kind of post-incarceration support that supervision would provide. Indeed, adding another five years to the five he is already required to serve would likely doom what has been the most transformative event for him in the last decade: the support of Mr. Keelen and the prospect of a solid job matching his incredible intelligence and technological gifts.

While lengthy, Mr. Wunderlich's nonviolent criminal history was significantly influenced by the failure of state penal systems to provide support and supervision for someone with mental illness, trauma, and addiction challenges. This Court, by contrast, has power to use the incredibly flexible tool of supervised release—which can always result in additional incarceration, if necessary—to ensure that Mr. Wunderlich receives the structure, support, and treatment that he needs to succeed. According to Dr. Boyd's report, Mr. Wunderlich is likely to thrive in that environment, which would benefit society both by his productive contributions in the workplace and by saving hundreds of thousands of dollars in jail costs. Mr. Wunderlich is eager to show the Court that with the support of Mr. Keelen and treatment for his mental health conditions, he will finally realize his potential and bring his many gifts to the world.

For these reasons, Mr. Wunderlich respectfully asks the Court to sentence him to 60 months, with ten years of supervised release, to be evaluated for early termination at year five. This sentence recognizes the serious yet limited offense of transacting in 17 videos in 2016–17, while adhering to the directives of Congress to avoid unwarranted sentencing disparities and to fashion a sentence that is sufficient, but no greater than necessary to meet the purposes of sentencing in § 3553(a).

June 20, 2022                                       Respectfully submitted,

                                                    /s/ Matthew J. Peed         .
                                                    Matthew J. Peed (D.C. Bar No. 503328)
                                                    CLINTON & PEED
                                                    1775 I St. NW, Suite 1150
                                                    Washington, D.C. 20006
                                                    (202) 919-9491 (tel)
                                                    (202) 587-5610 (fax)

                                                    *Counsel for Defendant Charles Wunderlich*